UNITED STATES DISTRICT COURT

For the Northern District of California

1
2
3
4
5
6               UNITED STATES DISTRICT COURT
7               NORTHERN DISTRICT OF CALIFORNIA
8
9
10 THE FLINTKOTE COMPANY, a Delaware            No. C 04-01827 MHP
Corporation,
11               Plaintiff,
12         v.                 **MEMORANDUM & ORDER**
                                         **Re: Cross-Motions for Summary**
13 GENERAL ACCIDENT ASSURANCE COMPANY     **Judgment**
OF CANADA, a Canada insurance company;
14 GENERAL ACCIDENT FIRE AND LIFE
ASSURANCE CORPORATION LIMITED OF
15 PERTH, SCOTLAND, a Scotland insurance company;
and Does ONE through TEN,
16
              Defendants.
17
18 _____/
19       On April 14, 2004 plaintiff the Flintkote Company filed an action in San Francisco Superior
20 Court against defendants General Accident Assurance Company of Canada and General Accident
21 Fire and Life Assurance Corporation Limited of Perth, Scotland, predecessors of Aviva Insurance
22 Company of Canada.  The state complaint alleged breach of contract for defendants' failure to
23 defend or indemnify plaintiff for claims covered under an insurance policy issued to two of
24 plaintiff's subsidiaries.  Defendants removed the action to this court.  Now before the court are
25 Flintkote's motion for summary judgment on defense and coverage issues and defendant Aviva's
26 motion for partial summary judgment on the statute of limitations.  Having considered the parties'
27 arguments and submissions, and for the reasons set forth below, the court rules as follows.
28

BACKGROUND

Plaintiff, presently based in San Francisco, is a company that formerly mined and sold asbestos and asbestos-based products.  Defendants are insurance companies (hereinafter "Aviva") that issued general liability policies to two of plaintiff's Canadian subsidiaries—The Flintkote Company of Canada LTD and The Flintkote Mines Limited.  Plaintiff was recently forced to seek bankruptcy protection as a result of the enormous volume of asbestos-related litigation that arose in response to the revelation that exposure to asbestos fibers can have severe long-term health consequences.  Plaintiff brought the present action in order to obtain declaratory relief related to the scope of coverage under plaintiff's policies with defendants as well as indemnification for money paid out as a result of past litigation.  Plaintiff seeks declaratory relief as to all asbestos claims, past, present and future, for which defendants might have a duty to defend or a duty to indemnify.

The insurance policy at issue, number L-90-5010 (the "policy"), was a commercial general liability insurance policy in force between 1958 and 1961.  The policy provides, in relevant part, broad coverage for damage associated with the insured's products and sets out defendants' duty to defend:

Coverage A - Bodily Injury Liability

To pay on behalf of the Insureds all sums which the Insured shall become legally obligated to pay by reason of liability for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons . . .

Assumed Liability. Products Liability

Coverage A and Coverage B shall include coverage for liability assumed by the Insured under any contract or agreement in force at any time during the policy period, and also for liability arising out of the possession, consumption, processing or use of any merchandise or product manufactured, sold, processed, or distributed by the Insured.

IV. Defense, Settlement, Supplementary Payments

It is further agreed that [Aviva] shall:
(a) defend in the name and on behalf of the Insured any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but [Aviva] shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by [Aviva].

2

. . .

> [Aviva] agrees to pay the expenses incurred under divisions (a) and (b) of this section in addition to the applicable limit of liability of this policy.

Bay Decl. Exh. 1, at 1 (hereinafter "Policy").  The parties do not dispute that the policy covers liability attributable to the sale of asbestos and asbestos-based products.  JSUF ¶ 2.

In response to the parties' earlier motions for partial summary judgment, the court construed the term occurrence to mean "exposure to asbestos that causes and immediately precedes an injury giving rise to liability under the policy." Flintkote Co. v. General Acc. Assur. Co., 410 F. Supp. 2d 875, 894 (N.D. Cal. 2006) (Patel, J.).  The court also concluded that the policy term "Affiliated Corporations" included the Flintkote Company as the corporate parent of the insured.  Subsequently, the court denied Aviva's motion to dismiss Flintkote's claim for declaratory relief as to the future claims. Flintkote Co. v. General Acc. Assur. Co. of Canada, No. C 04-01827, 2006 WL 1867538 (N.D.Cal. July 5, 2006) (Patel, J.).

On November 13, 2006 the parties filed the instant motions for summary judgment.  Flintkote argues that Aviva has a duty to defend it in past, pending and future asbestos actions as well as a duty to indemnify Flintkote for any resulting liability.  Aviva argues that the applicable statute of limitations bars some of the past claims as well as the claims assigned to Flintkote by other insurers.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

3

1   issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the

2   opposing party will have the burden of proof at trial, the moving party need only point out "that

3   there is an absence of evidence to support the nonmoving party's case."  Id.

4   　　　Once the moving party meets its initial burden, the nonmoving party must go beyond the

5   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

6   genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

7   party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th

8   Cir. 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and

9   inferences drawn from the facts must be viewed in the light most favorable to the party opposing the

10  motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

11

12  DISCUSSION

13

14  I.       Flintkote's Motion for Summary Judgment

15  　　　Flintkote asks the court to grant summary judgment on both Flintkote's claim for declaratory

16  relief with respect to pending and future asbestos claims and its breach of contract claim with respect

17  to the past paid asbestos claims.  The court will consider each claim in turn.

18

19  　　　　A.       Claim for Declaratory Relief as to Present and Future Claims

20  　　　Flintkote argues that Aviva has a duty to defend all complaints—pending and

21  future—alleging asbestos bodily injury against Flintkote, where the claimant may have been

22  exposed to asbestos during the policy period and/or may have suffered subsequent disease during the

23  policy period.  This duty exists until each case is resolved or until Aviva can conclusively

24  demonstrate a lack of coverage.

25  　　　At the outset, the parties appear to disagree as to the burden of proof at this stage in the

26  litigation.  As the party moving for summary judgment on the issue of coverage, Flintkote must

27  make a prima facie showing that the asbestos claims may potentially fall within the terms of the

28

4

policy.  See Anthem Elec., Inc. v. Pacific Employers Ins. Co., 302 F.3d 1049, 1055 (9th Cir. 2002) (describing the insured's burden, under California law, on summary judgment to make a prima facie showing that the underlying suit is potentially covered under the policy). Then, the insurer must demonstrate that the claims would not be covered under any conceivable theory.  Montrose Chemical Corp. v. Sup. Ct., 6 Cal. 4th 287, 300 (1993) ("Montrose I").

Under California law, the insurer has a broad duty to defend its insured.  Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).  Under the terms of the policy, Aviva has a duty to defend Flintkote in "*any* suit against the Insured alleging such injury or destruction [as would be covered by policy] and seeking damages on account thereof." Policy, at 2 (emphasis added).  In order to establish a duty to defend, the insured must only show that the complaint is potentially covered by the policy.  Montrose I, 6 Cal. 4th at 299.  The policy provides coverage for bodily injury liability for "all sums which the Insured shall become legally obligated to pay by reason of liability for damages . . . because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons."  Policy, at 2.

As an initial matter, the parties agree on several basic constraints to coverage.  First, any claims resulting from exposure to asbestos after January 1, 1961, the end of the policy period, are not covered by the policy.  Second, the policy specifically excludes claims of bodily injury by employees of Flintkote sustained while working unless the claiming employee does not have workers compensation benefits.  Id. at 3.  Third, the policy also contains an exclusion for injuries sustained in connection with vehicles and equipment.  Claims falling within these exceptions are excluded from coverage.  Therefore, Aviva has no duty to defend or indemnify any present or future claims of these types.

Determination of coverage turns on the interpretation of the term "injury" in the policy.  The question for the purpose of triggering coverage in any case is when did the "injury" take place. Armstrong World Ind., Inc. v. Aetna Cas. & Sur. Co., 45 Cal. App. 4th 1, 39 (1996).  Flintkote asks the court to adopt the continuous trigger theory for asbestos-related injury.  Under this theory, Flintkote contends the policy would cover both injuries arising from exposure during the policy

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    period as well as injuries resulting from exposures before the policy period that manifested during

2    the policy period.  In response, Aviva argues that the continuous trigger theory is inapposite.

3    Instead, the court's previous construction of the term "occurrence" in the limitation of liability

4    provision should inform its interpretation of when an injury took place.  Under this view, only

5    exposures to asbestos during the policy period—between January 1, 1958 and January 1, 1961—are

6    covered by the policy.  Certainly, any damage resulting from exposure during the policy period that

7    occurs beyond the policy period is covered.  Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal.

8    4th 645, 686 (1995) ("Montrose II").  Because the parties agree that exposures to asbestos during the

9    policy period are covered by the policy, the court considers only whether injuries arising from pre-

10   1958 exposures that manifested during the policy period are covered by the policy.  Therefore, the

11   court must determine whether the language of the policy will sustain Flintkote's proffered reading to

12   include pre-1958 exposures.

13        In its previous orders, the court has set out the methods and interpretive authorities

14   appropriate for insurance policy interpretation and need not repeat that discussion here.  See

15   Flintkote, 410 F. Supp. 2d at 886-87.  Flintkote offers a host of extrinsic evidence, including

16   evidence of Aviva's post hoc understanding of the policy terms.  Pl's Mot. at 11-12.  Such evidence

17   is irrelevant to interpretation of a contract and the court has not considered it.  Rather, it is

18   appropriate to begin with the language of the policy.  The policy defines the term "bodily injury" to

19   include

20        sickness, disease, disability and mental anguish, and also personal injury arising out of
          1) [f]alse arrest, false imprisonment, false eviction, detention or malicious prosecution;
21        2) libel, slander or defamation of character, except that which arises out of advertising
          activities.
22

23   Policy at 2.  As Aviva properly notes in its papers, the court has previously observed that the terms

24   "occurrence" and "injury" have distinct meanings.  Flintkote, 410 F.Supp.2d at 891.  Occurrence, as

25   previously construed, is an "exposure to asbestos that causes and immediately precedes an injury

26   giving rise to liability under the policy."  Id. at 875.  Thus, injury must mean something other than

27   simply exposure to asbestos; injury is rather the result of asbestos exposure.  Indeed, a reading of the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

"ASSAULT" section of the policy confirms this conclusion: "bodily injury or death alleged to have been caused by an assault shall be deemed the result of an occurrence within the meaning of the policy."  Policy at 2.  In this context, bodily injury is the result of an occurrence of assault as injury in the asbestos context is the result of exposure.  Such a reading favors Flintkote's proposed construction to include the injuries resulting from pre-1958 exposures that manifested during the policy period.

The reasonable expectations of the insured also support this reading of the policy.  "[T]he commencement of [asbestos-related] injuries []is not so definite." Armstrong, 45 Cal. App. 4th at 40.  The progressive nature of asbestos related injuries suggests that a continuous trigger theory—whereby a policy is triggered on a claim if it was in effect at exposure, at the time of the manifestation, or during the latency period—is the most reasonable.  The California Supreme Court adopted the continuous trigger theory for claims of continuous or progressively deteriorating damage or injuries, such as asbestos related injuries.  See Montrose II, 10 Cal. 4th at 674 (concluding that continuous trigger theory conforms to the reasonable expectations of the insured in light of the "cumulative and deteriorating nature" of asbestos-related injuries).  Therefore, the court concludes that the policy covers bodily injuries resulting from pre-1958 exposures that manifested during the policy period.  As such, Flintkote has made a prima facie showing that Aviva has a duty to defend all claims arising from exposures during the policy period and all claims arising from injuries manifested during the policy period with only such exceptions as the court has described.  Aviva has presented no tenable arguments with respect to the pending and future claims that would excuse its duty to defend.[1]

Based on this showing, the court concludes that Flintkote is entitled to declaratory relief on its pending and future claims as to the duty to defend all claims meeting this construction of the policy.  In accordance with the language of the policy, this duty is not limited by the per occurrence limitation of liability on coverage.  Similarly, the court declares that Aviva has a duty to indemnify Flintkote for all such present and future claims that meet the definition of injury in the policy.

1    Therefore, the court GRANTS Flintkote's motion for summary judgment with respect to its

2    claim for declaratory relief as to pending and future claims.

3        B.    Breach of Contract for Past Claims

4    Having previously determined the meaning of injury as applied to asbestos bodily injury

5    claims,  the court is satisfied that Flintkote has met the burden of showing that some of the past, paid

6    claims were potentially covered under the policy and that Aviva is liable for breach of its contractual

7    duty to defend those cases in which the complaint alleges facts satisfying the definition of injury.

8    That is, where the complaint alleges injury resulting from asbestos exposure during the policy period

9    or injuries that manifested during the policy period, Aviva had a duty to defend.  The parties do not

10   dispute the fact that Aviva did not provide any defense for the asbestos bodily injury claims brought

11   against Flintkote.  Therefore, unless Aviva can demonstrate that its duty was excused, Aviva is liable

12   for a breach of its duty to defend Flintkote against all past cases which meet this definition.

13   Having concluded that Flintkote has demonstrated the potential of coverage, then Aviva's

14   duty to defend is excused only if Aviva can show that these claims could not invoke coverage "by

15   [any] conceivable theory."  Montrose I, 6 Cal. 4th at 300.  Instead, Aviva argues that Flintkote's

16   alleged breach of the policy's notice provision excuses Aviva's failure to defend the past claims.

17   Flintkote, in turn, contends that its alleged failure to provide notice, if any, is excused because Aviva

18   waived defects in notice when it denied liability for other reasons but failed to assert notice defects,

19   and Aviva cannot demonstrate that it was prejudiced by this failure.  In the alternative, Flintkote

20   argues that Aviva was given constructive notice of the claims.

21   The policy requires the insured to provide written notice of any "occurrence, considered as

22   coming within the scope of this policy . . . as soon as practicable after notice thereof has been

23   received by [Insured's] executive officers at the Insured's head office[], or by its Insurance

24   Manager."  Condition D (Notice of Occurrence), Policy, at 4.  Indeed, an insured must provide

25   notice to its insurer in order to trigger the duty to defend; failure to provide such notice will excuse

26   defense.  See Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal. App. 4th 966 (2000) (concluding, in the

27   context of failure to provide notice to a co-insurer, that insurer could not claim contribution).  Here,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

8

1    Aviva contends that Flintkote did not send notice of the underlying asbestos claims after May 24,

2    1996. <u>See</u> Ross Dec. ¶ 17 ("The last notice of asbestos bodily injury claims was sent by Flintkote on

3    May 24, 1996). As to claims tendered prior to that date, there appears to be no dispute that Flintkote

4    provided proper notice.  The remaining question is whether the claims filed between May 1996 and

5    the present are excluded from coverage on account of Flintkote's alleged failure to provide notice.

6           It is clear to the court that both parties behaved badly in this respect: Flintkote by dragging

7    its feet in pursuing its claims against Aviva; Aviva by failing to act on the pre-1996 notices provided

8    by Flintkote. Whether Aviva received actual notice of claims filed after May 1996 is disputed.

9    Flintkote cites internal Aviva documents from 1998 in which Aviva executives acknowledge having

10   received from Flintkote "new notices [each month which] place our company on notice of a[n]

11   occurrence and a duty to defend and indemnify." Fehner Dec., Exh. 6, at 2.  Aviva contends that the

12   references in these documents to notices received refer to complaints filed before May 1996.  Aviva

13   provides a declaration to support the contention that Aviva received no notices after May 1996.  <u>See</u>

14   Baker Dec. at ¶ 2.  Therefore, there is a dispute of material fact as to whether Aviva received notice

15   for claims filed after May 1996.

16          Flintkote contends that this dispute should not defeat summary judgment because Aviva must

17   show prejudice from any failure to provide notice.  <u>See</u> <u>Insurance Co. of State of Penn. v. Assoc.</u>

18   <u>Int'l Ins. Co.</u>, 922 F.2d 516, 523 (9th Cir. 1990) (applying California law).  And, according to

19   Flintkote, Aviva cannot make a showing of prejudice.  Aviva responds that the notice-prejudice rule,

20   developed in the context of late notice, is inappropriately applied in this context, where Flintkote

21   allegedly never provided notice at all.  The court agrees with Flintkote that the notice-prejudice rule

22   is applicable to the context where notice was never provided.  The purpose of a notice clause is to

23   "protect the insurance company from being placed in a substantially less favorable position than it

24   would have been if timely notice had been provided." <u>Id.</u> (internal citations and quotation marks

25   omitted).  This purpose is no less salient in the context of a failure to give notice than it is in the

26   context of untimely notice.  Therefore, the court determines that Aviva must provide some evidence

27   of prejudice from Flintkote's alleged failure to give notice of claims filed after May 1996.  Aviva

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    has provided no evidence of prejudice and, as such, has failed to meet its burden on the issue of

2    Flintkote's alleged breach of the notice provision.  It further has provided no evidence that it made

3    an objection to late or deficient notice pursuant to its obligations under California Insurance Code

4    section 553.

5         Flintkote asserts waiver as an alternative basis for excusing any failure of notice on the

6    claims filed after May 1996.  Where an insurer has denied liability under a policy, it waives any

7    claim to failure of notice.  CNA Cas. of Calif. v. Seaboard Sur. Co., 176 Cal. App. 3d 598, 617

8    (1986).  Aviva contends that the waiver rule is inapposite because Flintkote erroneously "equates

9    lack of agreement on coverage with a denial of coverage."  Def's Opp. at 14.  Aviva states that it

10   "never made a denial of coverage."  Def's Opp. at 14.  It is striking to the court that Aviva cites

11   communications between the parties from March 1983 to refute the argument that it waived notice

12   with respect to claims filed after May 1996.  Aviva's claim attempt to distinguish its earlier, stalling

13   behavior from a denial of coverage is spurious.  While Aviva never explicitly denied claims prior to

14   1996, its decision to "not respond[] to [Aviva's] notice documentation" is, for the purpose of waiver,

15   the same as denying coverage.  Fehner Dec., Exh. 6, at 2.  The waiver rule protects an insured who is

16   misled into believing that further notice would be futile.  Alta Calif. Reg'l Ctr. v. Fremont Indem.

17   Co., 25 Cal. App. 4th 455, 467–68 (1994); see also Comunale v. Traders & Gen. Ins. Co., 116 Cal.

18   App. 2d 198, 202–03 (1953).  The same logic applies to this situation in which notice was futile

19   based on Aviva's previous inaction.

20        Accordingly, the court concludes that claims filed after May 1996 are covered by the policy.

21   The court finds that Aviva has breached its duty to defend Flintkote in any of the past underlying

22   suits in which the complaint alleges facts sufficient to meet the definition of injury.

23        Similarly, Aviva has breached its obligation to indemnify Aviva for all losses associated with

24   liability from asbestos bodily injury because it has not made any liability payments in connection

25   with covered losses.  Aviva argues that the voluntary payments provision of the policy bars

26   reimbursement of payments made by Flintkote to claimants in cases filed after May 1996. That

27   provision states that "[t]he Insured shall not, except at its own cost, voluntarily make any payments,

28

10

assume any obligation, or incur any expense other than for such immediate medical and surgical

relief to others as shall be imperative at the time of the occurrence or accident."  Condition E

(Assistance and Cooperation of the Insured), Policy at 4.  For similar reasons to those for rejecting

Aviva's waiver argument, the court rejects Aviva's contention that it should not reimburse Flintkote

for voluntary payments.  Aviva's failure to respond to notices given prior to May 1996 waives

Flintkote's alleged breach, if any, of the voluntary payment provision.  Alta, 25 Cal. App. 4th at  467

(Waiver rule articulated in Maier Brewing Co. v. Pacific Nat. Fire Ins. Co., 218 Cal. App. 2d 869,

878–80 (1963) is "generally [] applicable where an insurer denies all liability under the policy and

then seeks to raise, as a defense to the insured's lawsuit, the insured's failure to perform some

previously unarticulated policy-based obligation.").

The court concludes that Aviva has breached its duty to indemnify Flintkote for liability

payments made for covered injuries.  Aviva must indemnify Flintkote for all past, paid claims which

meet the definition of injury consistent with the limitation of liability in the policy.  Flintkote is

further entitled to a presumption that all claims are covered.  Aviva must show based on the

settlement or judgment that any claims are excluded from coverage.


C.      Application of Other Insurance Clause

The parties agree that interpretation and application of the "other insurance" clause of the

policy is appropriately left for the damages phase of this action.  Accordingly, the court will

entertain arguments on this issue at that time.


II.    Aviva's Motion for Partial Summary Judgment

Aviva argues that Flintkote's claims for declaratory relief and breach of contract are barred

by the applicable statutes of limitations.  Specifically, Aviva argues that by combining the four-year

statute of limitations for breach of contract codified in California Code of Civil Procedure section

337 and a one-year "reasonable time for performance," Flintkote is barred from asserting any cause

of action arising out of those claims Flintkote tendered to Aviva more than five years prior to the

11

1   filing of the present complaint.  Additionally, Aviva claims that where Flintkote asserts the assigned

2   claims of other insurers, those claims are subject to the two-year statute of limitations for equitable

3   contribution claims found in California Code of Civil Procedure section 339.

4         A.   The statute of limitations

5         By limiting the time within which a plaintiff may bring a claim, statutes of limitation

6   promote repose for defendants and stimulate plaintiffs to diligently prosecute their claims.  Fox v.

7   Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005).  Indeed, Flintkote only now seeks a

8   declaration of rights arising from claims tendered as long ago as 1982—a period remarkably akin to

9   the twenty years Rip Van Winkle slumbered.  Claims arising out of breach of "contract, obligation

10  or liability founded upon an instrument in writing," as Flintkote's claims do, must be brought within

11  four years of accrual.  Cal. Civ. Proc. Code § 337(1).  However, this is only the beginning of the

12  inquiry; the statute requires a determination of when the breach of contract accrued.

13        The duty to defend arises when a claim that may potentially be covered is tendered to the

14  insurer.  Buss v. Superior Ct., 16 Cal. 4th 35, 46 (1997).  A cause of action for failure to defend

15  accrues when the insurer refuses to defend a timely tendered claim that may be potentially covered.

16  Lambert v. Commonwealth Land Title Ins. Co., 53 Cal. 3d 1072, 1077 (1991).  A cause of action for

17  failure to defend is equitably tolled until the underlying litigation is resolved.  Id.; see also Eaton

18  Hydraulics Inc. v. Continental Cas. Co., 132 Cal. App. 4th 966, 973–74 (2005).  The duty to

19  indemnify arises when the liability of the insured is established, Buss, 16 Cal. 4th at 46, and an

20  insured's claim for indemnity accrues at that point.  Marenger v. Hartford Accident & Indem. Co.,

21  219 Cal. App. 3d 625, 631–32 (1990).

22        As both parties note, this is not the usual instance where the insurer has refused to defend or

23  indemnify an otherwise properly tendered claim.  Lambert, 53 Cal. 3d at 1077.  Rather, Aviva has

24  sat on the tendered claims and has neither paid nor denied Flintkote's claims.[2]  Additionally, the

25  contract between the parties defines no period for performance by the insurer.  However, this is a

26  distinction without a difference for purposes of the statute of limitations; a failure to defend violates

27  the duty to defend in much the same way as a refusal to defend: the insured suffers an identical

28

UNITED STATES DISTRICT COURT
For the Northern District of California

injury.  There is no principled reason a different statute of limitations should be applied to

Flintkote's breach of contract claims, nor should the accrual analysis be altered.  The fact that the

policy does not define a period for performance does not change the fact that Aviva failed to defend

the underlying claims and indemnify Flintkote at discrete points in time.  Aviva's argument that a

one-year period of time is a reasonable amount of time to add to the four-year statute of limitations

is on infirm footing, both factually and legally, and will not be adopted here.

      Aviva is on similarly shaky ground in analogizing its repeated failure to perform to cases

involving recurring wrongs.  Aviva cites to cases applying the continuing accrual rule, which limits

liability for recurring wrongs to those that occurred within the limitations period.  The continuing

accrual rule recognizes that "[t]he statute of limitations accrues when a plaintiff has the right to sue

on a cause of action.  When an obligation or liability arises on a recurring basis, a cause of action

accrues each time a wrongful act occurs, triggering a new limitations period."  Hogar v. Community

Dev. Comm'n of the City of Escondido, 110 Cal. App. 4th 1288, 1295 (2003) (citations omitted).

Unlike a recurring wrong, such as failure to pay on a contract that requires repeated payment, the

present contract required performance once for each claim tendered.  The obligation of Aviva to

perform arose when each separate claim was tendered; the fact that many claims were tendered does

not create a recurring obligation but rather many one-time obligations.  Flintkote has a right to sue

on each alleged breach, and the cause of action for each breach accrued at the time of that breach.

The continuing accrual rule is inapplicable to the present case, and the four-year statute of

limitations in Cal. Civ. P. Code section 337(1) will be applied.

      Flintkote argues that regardless of when its claims accrued, the statute of limitations is not a

bar to the present action.  Flintkote urges first that the doctrine of equitable tolling adopted in

Prudential-LMI Commercial Ins. v. Super. Ct., 51 Cal. 3d 674 (1990) should be applied to the

present case.  Alternately, Flintkote claims that principles of estoppel are applicable based on

Aviva's alleged misconduct.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

B.    Equitable tolling

Equitable tolling runs after a timely claim for loss is tendered to the insurer while the insurer investigates the claim, until coverage is denied. Prudential-LMI, 51 Cal. 3d at 693. The doctrine avoids the perverse possibility that an insured will have to file suit against its insurer before the claim is investigated or denied. Id. at 692. It also encourages insurers to diligently investigate claims before denying them, protects insureds from unwittingly forfeiting claims due to the statute of limitations, discourages unnecessary bad faith suits, and promotes prompt notice of claims to the insurer, thereby furthering and not frustrating the purposes of the statute of limitations. Id.

In first adopting the doctrine of equitable tolling, the California Supreme Court emphasized that its holding was applicable only to "first party progressive property loss cases in the context of a homeowners insurance policy" and explicitly chose not to apply its decision in the context of commercial liability. Id. at 679. However, Prudential-LMI dealt with a number of issues, including the adoption of the delayed discovery rule for accrual of a cause of action under California's one-year statute of limitations for property claims, as well as the allocation of indemnity between successive property insurers based on a continuous and progressive loss. Id. at 686–87, 693. In limiting the holding of Prudential-LMI, the court cited the "substantial analytical differences between first-party property policies and third-party liability policies" discussed in Garvey v. State Farm Fire & Cas. Co., 48 Cal. 3d 395 (1989). Prudential-LMI, 51 Cal. 3d at 679. Garvey in turn distinguished the "cause of loss" analysis in the first-party property context from the third-party liability context. Garvey, 48 Cal. 3d at 406. Prudential-LMI's analysis of the accrual of a cause of action was clearly limited to the property context. Cf. Montrose Chem. Corp. of Cal. v. Admiral Ins. Co., 10 Cal. 4th 645, 685 (1995) (distinguishing Prudential-LMI and adopting the continuous injury trigger of coverage analysis for progressive injury under third-party liability policies). However, neither Prudential-LMI nor Garvey hint at why the equitable tolling doctrine adopted in Prudential-LMI should be limited to the first-party property loss scenario.

In fact, equitable tolling has not been confined by California courts to the context of progressive property loss under a homeowner's policy. See San Jose Crane & Rigging, Inc. v.

14

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    Lexington Ins. Co., 227 Cal. App. 3d 1314 (1991) (applying equitable tolling to commercial

2    property loss); Forman v. Chicago Title Ins. Co., 32 Cal. App. 4th 998 (1995) (applying equitable

3    tolling to the two-year statute of limitations applicable to title insurance under Cal. Civ. P. Code

4    section 339(1)).  However, no California court has applied equitable tolling to commercial liability

5    claims.

6         The principles supporting equitable tolling are well-served in this case.  Flintkote's prompt

7    notice of its claims to Aviva is rewarded; Aviva's apparently dilatory investigation and failure to

8    accept or deny Flintkote's claims is not condoned.  While Flintkote first tendered claims in 1982 and

9    communicated with Aviva sporadically between 1988 and 1996, it can hardly be said to have sat

10   around wondering for over twenty years whether Aviva would eventually close its investigations and

11   accept or deny the tenders.  But nonetheless, the ball has been in Aviva's court since the underlying

12   claims were tendered.  Had Aviva accepted or denied the claims, the statute of limitations would

13   resume running.  The court finds that, given the principles behind equitable tolling and the

14   subsequent expansion of the doctrine first announced in Prudential-LMI, were a California court to

15   encounter this situation, it would likely apply the equitable tolling doctrine.

16        C.    Other equitable concerns

17        Flintkote argues in the alternative that Aviva has waived or forfeited the statute of limitations

18   defense by its conduct, and that it should be equitably estopped from using the statute as a bar to the

19   present action.

20        The doctrine of equitable estoppel is well-established in California.  The following

21   conditions must be present: "[t]he party to be estopped must be apprised of the facts; the other party

22   must be ignorant of the true state of facts, the party to be estopped must have intended that its

23   conduct be acted upon, or so act that the other party had a right to believe that it was so intended;

24   and the other party must rely on the conduct to its prejudice."  Hydro-Mill Co., Inc. v. Hayward

25   Tilton & Rolapp Ins. Assoc., Inc., 115 Cal. App. 4th 1145, 1165–66 (2004).  Key to any sort of

26   estoppel is reliance.  See Vu v. Prudential Prop. & Cas. Ins. Co., 26 Cal. 4th 1142, 1152–53 (2001).

27   Flintkote has made no showing that it relied on the conduct—or more specifically, the silence—of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Aviva.  Flintkote has also failed to demonstrate that it was "ignorant of the true state of facts."

2    Hydro-Mill, 115 Cal. App. 4th at 1165.  In fact, the record demonstrates quite the opposite: Flintkote

3    was well aware of and aggressively pursued its rights against all of its insurers.  On this basis,

4    equitable estoppel is inapplicable to this action.

5            Flintkote's arguments regarding waiver are based on statutes addressing defective notice.

6    See Cal. Ins. Code § 553 (defects in notice which insurer omits to specify are waived); Cal. Ins.

7    Code § 554 (delay in providing notice to insurer waived if insurer does not object on that basis).

8    The present motion to raise the statute of limitations is not based on any defect in notice.  The court

9    finds no waiver of the statute of limitations by Aviva on these grounds.

10           Flintkote also argues that Aviva has forfeited the statute of limitations based on its failure to

11   communicate with Flintkote.  Numerous cases and regulatory provisions do place a duty of

12   communication upon insurers.  See 10 Cal. Code Reg. § 2695.7(f) (insurer must notify

13   unrepresented insured of statute of limitations); 10 Cal. Code Reg. § 2695.4(a) (time limits of policy

14   must be disclosed to first party claimant); Sarchett v. Blue Shield, 43 Cal. 3d 1, 15 (1987) (insurer

15   cannot rely on review and arbitration provisions after failing to inform insured of the provisions).

16   However, section 2695.7 does not apply to the present case, as Flintkote is represented by counsel.

17   Sarchett and its predecessor, Davis v. Blue Cross of N. Cal., 25 Cal. 3d 418 (1979), analyzed

18   specific statutory provisions regulating notice of arbitration, and dealt with insureds who were

19   unaware of their rights.  Section 2695.4, upon which Flintkote repeatedly relies, has been construed

20   to apply only to time limits within the policy and—as with other applications of estoppel—to require

21   a lack of actual knowledge of the time limits by the insured.  Juarez v. 21st Century Ins. Co., 105

22   Cal. App. 4th 371, 376 (2003); Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exch.,

23   132 Cal. App. 4th 1076, 1091 (2005).  Flintkote has failed to argue, much less demonstrate, that it

24   was unaware of the time limits of the policy.

25           Nonetheless, the court cannot ignore Aviva's complicity in the aging of the underlying

26   claims.  Flintkote cites the clean hands doctrine, codified in the simple statement that "[n]o one can

27   take advantage of his own wrong."  Cal. Civ. Code § 3517.  Indeed, procrastination by one party that

28

UNITED STATES DISTRICT COURT
For the Northern District of California

delays accrual of its own obligation has been held to violate this maxim.  Potrero Homes v. Western

Orbis Co., 28 Cal. App. 3d 450, 458 (1972).   Such conduct, if condoned, would inequitably affect

the relationship between the parties.   Martin v. Kehl, 145 Cal. App. 3d 228, 239 (1983).  Delay

through silence is particularly inappropriate in the insurance context, given the overarching principle

that an insurer owes its insured a fiduciary duty to disclose relevant matters arising from their

relationship.   Spindle v. Chubb/Pac. Indem. Group, 89 Cal. App. 3d 706, 712 (1979).  While the

court finds equitable tolling applicable to the present action, core concepts of equity also counsel

against finding that Aviva forfeited its right to assert the statute of limitations.

> D.   Assigned insurer claims

Flintkote seeks damages both on behalf of itself and as an assignee of other insurers.  First

Am. Compl., ¶ 12.  Aviva is a primary insurer in this action.  Flintkote states that approximately

ninety-five percent of the amounts paid out on the underlying claims was paid by excess insurers,

and the remaining five percent was paid out by primary insurers.  Thus, Flintkote asserts that it has

been assigned claims by both excess and primary insurers, with the vast majority being excess

insurer claims.

The nature of the claims that other insurers may have assigned to Flintkote is unclear.

There is no evidence of any contract among the other insurers, whether excess or primary, and

Flintkote.  Some of these claims may well be tortious in nature, for injuries based on Aviva's failure

to defend, indemnify, and perhaps where appropriate, settle in good faith claims against Flintkote.

However, a primary insurer owes no direct duty to an excess insurer; rather, any duty arises "only by

way of subrogation to the insured's rights[,]" that is, by the excess insurer stepping into the shoes of

the insured.  Fireman's Fund Ins. Co. v. Maryland Cas. Co., 21 Cal. App. 4th 1586, 1599 (1994)

(applying Commercial Union Assurance Cos. v. Safeway Stores, Inc., 26 Cal. 3d 912 (1980)).  In

other words, the rights that the other excess insurers have assigned to Flintkote (the insured) are

rights that they acquired by stepping into the shoes of the insured.  But here it is the insured who is

prosecuting the action, thus leaving the court to wonder what other claims the other insurers could

have assigned that Flintkote is not already prosecuting on its own behalf.

UNITED STATES DISTRICT COURT
For the Northern District of California

The primary insurer claims assigned to Flintkote are more likely based on equitable contribution, which arises "when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1293 (1998). "The doctrine of equitable contribution applies to insurers who share the same level of obligation on the same risk as to the same insured," id. at 1294, and thus does not apply to the excess insurers.

In determining the proper statute of limitations for equitable contribution claims, the court comes to the as-yet unresolved debate between Liberty Mut. Ins. Co. v. Colonial Ins. Co., 8 Cal. App. 3d 427 (1970) (equitable contribution is based on contract and four-year statute of limitation applies) and Century Indem. Co. v. Superior Ct., 50 Cal. App. 4th 1115 (1996) (equitable contribution is based on non-contractual obligation and two-year statute of limitation applies). But the court need not resolve California's impasse as the parties have failed to identify the underlying claims with any precision. Though the parties have skirted around the issue, both parties have agreed that the "other insurance" provision of the contract between Aviva and Flintkote should be dispensed with at the damages phase of this case. The assigned claims and obligations of other insurers, whatever they are, have been poorly addressed by the parties and bear little relation to the liability phase of this case. These claims, including any statute of limitations that may apply to them, should, along with the "other insurance" provision, be addressed at the damages phase of this case.

18

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED and defendant's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

Dated: 3/9/2007

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
For the Northern District of California

## ENDNOTES

1.  To the extent that Aviva makes any failure of notice arguments with respect to pending claims, those arguments do not excuse Aviva from its duties to defend and indemnify under the court's analysis *infra*.

2.  In its motion for summary adjudication on the statute of limitations, Aviva does not challenge the sufficiency of Flintkote's tender of the underlying claims.  Accordingly, for purposes of statute of limitations analysis, the court will not address notice or the sufficiency of those tenders.