United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE FLINTKOTE COMPANY,<br><br>         Plaintiff,<br><br>    v.<br><br>GENERAL ACCIDENT ASSURANCE COMPANY OF CANADA, et al.,<br><br>         Defendants. | No. C 04-1827 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendant's Motion for Application of Canadian Law** |

    In this action, which was filed in May 2004, plaintiff The Flintkote Company ("Flintkote") alleged that defendant Aviva Insurance Company of Canada ("Aviva"), the successor-in-interest to General Accident Assurance Company of Canada ("General Accident"), failed to defend or indemnify Flintkote for claims covered under a primary insurance policy. The court has ruled on several motions. It has found that Flintkote was a named insured under the policy and that Aviva violated its contractual obligations to Flintkote. Defendant now moves the court to apply Ontario law to two questions: whether a particular letter, the contents of which might bear on the question of whether Flintkote is a "named insured" under the policy, should be admitted into evidence; and which method of allocation to apply among Flintkote's insurance policies. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND

I.  The Policy

Plaintiff Flintkote, presently headquartered in San Francisco, is a company that formerly mined and sold asbestos and asbestos-based products. Defendant Aviva, based in Toronto, is the successor-in-interest to, among others, General Accident, which issued general liability policies to two Flintkote Canadian subsidiaries: The Flintkote Company of Canada Limited ("Flintkote Canada") and The Flintkote Mines Limited ("Flintkote Mines"). In 2004, Flintkote sought bankruptcy protection as a result of the large volume of asbestos-related litigation that arose in response to findings that exposure to asbestos fibers can have severe long-term health consequences. Flintkote brought the present action in order to secure declaratory relief related to the scope of coverage under its policy with Aviva and to obtain indemnification, on behalf of itself and its other insurance carriers, for money paid out as a result of past litigation.

The insurance policy at issue, number L-90-5010 ("the policy"), was a commercial general liability policy in force between 1958 and 1961. The policy obligates General Accident to pay on behalf of the insured sums arising from third-party bodily injury, property damage or products liability claims against the insured. *See* Docket No. 297 (Ross. Dec.), Exh. A at TR0000045. The policy also obligates General Accident to defend or indemnify the insured with respect to lawsuits falling within the ambit of the coverage. *See id.* The policy provides that the "Name of Insured" includes "THE FLINTKOTE COMPANY OF CANADA LIMITED and/or THE FLINTKOTE MINES LIMITED and/or Subsidiary or Affiliated corporation or corporations now existing or hereafter created as their respective interests may appear." *Id.* at TR0000041. Additionally, the policy states, "This policy shall apply to occurrences occurring anywhere in the World, provided suit is brought in the Dominion of Canada or the United States of America, its territories or possessions." *Id.* at TR0000047.

On October 12, 1982, Flintoke's risk manager gave notice of the first claim against the policy to Marsh & McLennan of Toronto, Flintkote's insurance broker.[1] *See* Docket No. 376 (Chen Dec.), Exh. 1. Neither General Accident nor Marsh & McLennan had a copy of the policy.

2

Flintkote forwarded a copy to Marsh & McLennan on December 8, 1982. *Id.*, Exh. 2. The copy of the policy Flintkote furnished included a letter dated May 23, 1958, from Eric Lawrence at General Accident in Toronto to C. D. Milling at Marsh & McLennan in Toronto ("the 1958 letter"). Lawrence's letter delivered the policy and stated, "This letter will confirm that the above-numbered policy is primary insurance applying to Canadian operations." Ross Dec., Exh. A at TR0000045.

II.     Relevant Prior Decisions

In January 2006, deciding a motion for summary judgment brought by Flintkote, this court concluded that the policy term "Affiliated corporations" included plaintiff The Flintkote Company, and that The Flintkote Company was therefore a "named insured." *Flintkote Co. v. Gen. Accident Assurance Co.*, 410 F. Supp. 2d 875, 894 (N.D. Cal. 2006) (Patel, J.); Docket No. 89 ("Order of January 2006"). In arguing that motion, Aviva raised the question of whether Canadian contract interpretation rules should apply to the instant action. Aviva's entire discussion of the issue read as follows:

> The subject policy was issued to Canadian insureds through a Canadian broker, Marsh. The contract was made in Canada. Under Canadian law, this contract is to be interpreted with respect to this issue according to the laws of Ontario. Section 123 of the Insurance Act of Ontario. (See Declaration of Judith Gold, ¶ 7, and Exhibit 7 thereto, and Request for Judicial Notice.) Aviva's research has disclosed that in the area of contract interpretation, there is slight or no difference between the laws of Ontario, and the laws of California. Because it is assumed the Court has more familiarity with California law than it has with Canadian law, Aviva has cited California law. Aviva's references to California law should not be construed as a waiver of Aviva's right to rely upon Canadian law under other circumstances.

Docket No. 64 (Def.'s Opp. to Pl.'s Mot. re: "Named Insured" Issue) at 7:20-8:5. The court noted in its order:

> The parties dispute whether Canadian law or California law should govern interpretation of the policy, but defendants concede that there are no material differences in the two bodies of law for purposes of deciding the instant motions. [Endnote.] The court will therefore apply California law.
>
>> [Endnote:] Defendants somewhat confusingly include "Choice of Law" sections in their briefs in opposition, suggesting that the choice of law may have bearing on the resolution of the motions. In the same section, however, defendants note that "there is slight or no difference between the laws of Ontario, and the laws of California." As defendants have stated no cognizable argument based on choice of law, the court will assume that California law governs for purposes of deciding the instant motions.

3

410 F. Supp. 2d at 880.

In March 2007, the court granted Flintkote's motion for summary judgment on Flintkote's claim for declaratory relief with respect to pending and future asbestos claims and on Flintkote's breach of contract claim with respect to the past paid asbestos claims. The court denied Aviva's partial motion for summary judgment that Flintkote's claims were barred by the applicable statutes of limitations. The court found that Flintkote had properly tendered its claims to Aviva through its various notices and communications. *Flintkote Co. v. Gen. Accident Assurance Co.*, 480 F. Supp. 2d 1167, 1176 (N.D. Cal. 2007) (Patel, J.); Docket No. 159. As regards the application of the policy's "other insurance" clause, the court noted: "The parties agree that interpretation and application of the 'other insurance' clause of the policy is appropriately left for the damages phase of this action. Accordingly, the court will entertain arguments on this issue at that time." Docket No. 159 at 11.

In August 2008, the court again ruled on cross-motions for partial summary judgment. It ruled that: (1) Flintkote is directly harmed by Aviva's failure to pay on past claims insofar as other insurance is prematurely exhausted and is unavailable to pay on future claims; (2) under recently executed settlement agreements containing undisputed assignments, as well as under the Wellington Agreement and others like it, Flintkote has the authority to assert claims on behalf of its other insurers to recover amounts those insurers paid in lieu of Aviva; and (3) the claims of the other insurers are equitably tolled. The court also adopted a pro rata by per occurrence standard to determine damages, as described in detail in the court's order. *Flintkote Co. v. Gen. Accident Assurance Co.*, 2008 WL 3270922 (N.D. Cal. Aug. 6, 2008) (Patel, J.); Docket No. 244 ("August 2008 Order"). In its briefing papers on these motions, Aviva never raised a choice of law issue and, indeed, relied upon California law. *See* Docket No. 202 (Def.'s Opp. to Pl.'s Mot. to Streamline Damages) at 7-15. Aviva did not cite a single Canadian case. *See id.* at iii-iv.

In September 2008, the court appointed a Special Master. The scope of his duties was described as follows:

> The Special Master shall review the provisions and/or policies at issue in light of the Court's August 6, 2008 Order. The Special Master shall issue a report and recommendation on the issues of which policies in dispute are general excess policies and which policies in dispute are specific excess policies in light of the August 6,

4

> 2008 Order, and which specific excess policies share defense and indemnity obligations with Aviva (including all issues regarding whether a policy drops down and shares with Aviva, including whether lower-level general excess policies or lower-level policies issued by insolvent insurers prevent higher-level specific excess policies from dropping down, whether an otherwise specific excess policy that attaches upon a certain amount of "loss" but excludes other insurance from its definition of covered loss would share with Aviva, and whether Aviva can share defense costs with a specific excess policy in which the ultimate net loss definition excludes defense costs if other insurance exists). The Special Master may review and/or report on any additional disputes pursuant to the consent of both parties or further order of this Court.

Docket No. 257 at 1. The parties stipulated to the selection of the Honorable Harry W. Low (Ret.) to serve as Special Master. Justice Low had previously served as Insurance Commissioner of the State of California and as a Justice of the California Court of Appeal. Low reviewed well over one hundred insurance policies, determining on a policy-by-policy basis, *inter alia*, which policies shared with Aviva and which dropped down. He applied California law to reach his conclusions. He completed his final report on November 13, 2008. *See* Docket No. 260, Exh. A. The court adopted the Special Master's report and recommendations on February 11, 2009, rejecting Aviva's objections to the Special Master's findings. *See* Docket No. 278 (hearing transcript) at 26. Aviva relied exclusively upon California law in framing its objections. *See* Docket No. 262.

Currently remaining for adjudication are Flintkote's claim for bad faith and the final determination of damages for Flintkote's claims. Aviva filed the instant motion for application of Canadian law on August 31, 2009. Oral argument was heard on October 7, 2009.

LEGAL STANDARDS

I.   Choice of Law

In a diversity action, a federal district court applies the choice of law rules of the state in which it sits. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1. To determine whether a party has given reasonable notice of its intent to invoke foreign law, a court should: (1) consider the stage which the case has reached at the time of notice; (2) evaluate the

1  reason proffered by the party for the failure to give earlier notice; and (3) consider the importance to
2  the case as a whole of the issue of foreign law. *See APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, ___ F.3d
3  ___ , 2009 WL 2988511, at *6-8 (9th Cir. Sep. 21, 2009). "Where no authority, or insufficient
4  authority, is presented by the parties about foreign law, a court may conclude that the parties have
5  acquiesced in the application of the law of the forum." *Hatfield v. Halifax PLC*, 564 F.3d 1177,
6  1184 (9th Cir. 2009) (quoting *Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453,
7  1458 (9th Cir. 1989)).

8  II.     Law of the Case

9       "The law of the case doctrine precludes a court from reconsidering an issue that it has
10 already resolved. Issues that a district court determines during pretrial motions become law of the
11 case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) (footnotes omitted). The doctrine
12 is not a limitation on a tribunal's power, but rather a guide to discretion. *United States. v.
13 Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "A court may have discretion to depart from the law
14 of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has
15 occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist;
16 or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case
17 absent one of the requisite conditions constitutes an abuse of discretion." *Id.* (citation omitted).

18

19 DISCUSSION

20      On this motion Aviva requests an order applying Ontario law with the result that The
21 Flintkote Company is found not to be a named insured under the policy. Aviva states that in so
22 doing it is requesting the application of Ontario evidence law to the question of the 1958 letter's
23 admissibility. Alternatively, Aviva requests an order deciding that Ontario's law applies to the
24 allocation among Flintkote's policies, which would purportedly result in the application of a time-
25 on-risk method of allocation.[2]

26      Aviva argues that, despite the lengthy analysis of the purported differences between
27 California and Canadian contract law found in its briefs, *see, e.g.*, Docket No. 296 (Def.'s Mot.) at

28

6

7:9-12:12, 12:17-12:27, 13:4-14:2, Aviva is actually requesting the application of Canadian evidence law, not contract law.[3] The court understands Aviva's theory to be that if the 1958 letter were admitted, this court would find that The Flintkote Company is not a named insured under the policy. As noted, the letter states, "This letter will confirm that the above numbered policy is primary insurance applying to Canadian operations." Ross Dec., Exh. A at TR0000045. In Aviva's view, this sentence confirms that the parties intended the policy at issue to cover only Flintkote Canada and Flintkote Mines, not The Flintkote Company.

Flintkote responds, *inter alia*, that law of the case doctrine compels denial of the instant motion. On October 28, 2005, Flintkote filed an objection to admission of the 1958 letter as evidence. Aviva responded, relying exclusively upon the Federal Rules of Evidence. *See* Docket No. 86 (Def.'s Response to Pl.'s Objections). The court determined that the letter was inadmissible hearsay. Order of January 2006 at 11. Thus, the admissibility of the letter has already been decided. Prior to the decision, Aviva had an opportunity to argue Canadian law should apply but instead chose to rely on the Federal Rules of Evidence. The court has already decided the issue; therefore, law of the case doctrine requires a denial of the motion. A court has the discretion to depart from the law of the case under certain circumstances. *See Alexander*, 106 F.3d at 876. Here, no such circumstance obtains, and Aviva has not contended that such a circumstance obtains except insofar as it has simply expressed disagreement with the court's earlier decision.

The relevant authorities on choice of law also support denial of Aviva's motion. "Under California's choice of law rules, a California court 'will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.'" *Hatfield*, 564 F.3d at 1184 (quoting *Hurtado v. Superior Court*, 11 Cal.3d 574, 581 (1974)). Aviva argues that the instant motion is timely and gives reasonable notice because it has been filed before pretrial hearings or trial. *See DP Aviation v. Smiths Indus. Aerospace & Defense Sys. Ltd.*, 268 F.3d 829, 848 (9th Cir. 2001) (noting first consideration of foreign law may sometimes be appropriate after trial or even on appeal). Indeed, Aviva gave notice in 2005 that it might subsequently invoke Canadian law for purposes other than contract interpretation. *See* Def.'s Opp. to Pl.'s Mot. re: "Named Insured" Issue at 7:20-8:5. Yet,

7

subsequent to making this reservation, Aviva argued for admissibility of the 1958 letter using only California law.[4]  Aviva did not "timely invoke[] foreign law . . . at the first opportunity when the issue became material." *See APL*, 2009 WL 2988511, at *7.  Aviva had an opportunity to invoke foreign law while advancing its evidentiary arguments regarding the 1958 letter, and it failed to do so.[5]  Nor has Aviva offered *any* explanation why it did not give notice of its intent to rely upon foreign law at the time the issue of the letter's admissibility was adjudicated. *See id.*  Nor was the evidentiary issue an isolated one, separate from the issues that had already been decided. *See id.*  The issue has already been argued by the parties relying upon California law and decided by the court using California law.  It is hard to imagine a clearer case in which the invocation of foreign law is untimely.

Even if the instant evidentiary motion were timely, it would still be denied.  "Most evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern in diversity cases." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tomkins*, 304 U.S. 64 (1938)) (citation and internal quotation marks omitted).  State evidentiary rules are applied only when they are "'intimately bound up'" with the rights and obligations being asserted, *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995) (quoting *Erie*, 304 U.S. at 78), or when they "in fact serve substantive state policies and are more properly rules of substantive law within the meaning of *Erie*," *id.* (quoting 19 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4512, at 194-95 (1985)).  In *Wray*, the Ninth Circuit deferred to the evidentiary rules used by Nevada's medical malpractice screening panel where Nevada had established an integrated scheme for handling medical malpractice claims.  The court found that federal courts' application of the Federal Rules of Evidence in derogation of the state rules would encourage forum shopping and undermine Nevada's scheme for dealing with this substantive area of the law. *Id.* at 1417-18.  Similarly, the *Feldman* court held a provision of the California Penal Code that made taping a confidential conversation a crime to limit the admissibility of illegally intercepted conversations, even where the Federal Rules of Evidence would allow the evidence to be admitted.  322 F.3d at 666-67.  The court found that the California statute embodied a substantive interest in the privacy of

8

California citizens and was accordingly to be treated as substantive law for *Erie* purposes. *Id.* at 667. By contrast, Aviva has not shown that Ontario evidentiary law, under which Aviva purports the 1958 letter would be admissible, is intimately bound up with Aviva's rights or serves the substantive policies of Ontario. Aviva has shown only that Ontario may have a procedural rule that differs from the federal procedural rule. This does not provide grounds to subordinate the Federal Rules of Evidence to Ontario law.[6]

Aviva has also moved the court, should the court deny Aviva's motion pertaining to the "named insured" issue, to consider applying Ontario law to the allocation among Flintkote's policies. A separate choice of law inquiry is made with respect to each issue in a case. *Beech Aircraft Corp. v. Superior Court*, 61 Cal. App. 3d 501, 518 (1976). Here too Aviva seeks to relitigate an issue that has already been litigated at great length and decided. Aviva specifically seeks "an Order that Ontario's law applies to the allocation among Flintkote's policies, such that the time on risk method is applied." Def.'s Mot. at 21. As noted above, Aviva has already had an opportunity to argue for the time-on-risk method. It briefed the issue extensively and relied exclusively on U.S. law. *See* Def.'s Opp. to Pl.'s Mot. to Streamline Damages at 7-15. Applying California law, the court rejected Aviva's argument: "Aviva argues for a per-occurrence method of apportionment, but further asks the court to consider the length of time the Aviva policy was in effect. Effectively, Aviva argues that a 'time-on-risk' system of coverage ought to be adopted. . . . [T]he court rejects Aviva's argument and adopts the standard pro rata method of apportionment according to per occurrence limits." August 2008 Order at 23-24. Aviva's instant motion fails as to the allocation issue for the same reasons it fails as the the "named insured" issue. Aviva is simply trying to get a second lick from the lollipop. No litigant is entitled to relitigate an issue under the laws of various jurisdictions until it achieves its desired result.[7]

///

///

///

9

CONCLUSION

For the foregoing reasons, defendant's motion for the application of Canadian law is DENIED.

IT IS SO ORDERED.

Dated: October 26, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

10

United States District Court
For the Northern District of California

# **ENDNOTES**

1. The risk manager was employed by Genstar Corporation, which had taken over Flintkote by that time.

2. For the reasons discussed in this memorandum and order, the court does not reach the merits of Aviva's assertions pertaining to the content of relevant Canadian law.

3. Aviva apparently recognizes that it agreed to the application of California contract law in 2005, representing that "in the area of contract interpretation, there is slight or no difference between the laws of Ontario, and the laws of California." Def.'s Opp. to Pl.'s Mot. re: "Named Insured" Issue at 7:26-28.

4. As noted, the court remarked in its March 2007 order that interpretation and application of the "other insurance" clause would be left for the damages phase of the action. Aviva suggests that its instant motion is therefore timely because the litigants are now in the damages phase. This argument ignores the fact that the damages issue to which Aviva seeks to apply Canadian law was decided in August 2008. The court's March 2007 remark cannot be read to suggest that Aviva can raise the same issue *ad infinitum* as long as the action is still in the damages phase.

5. Aviva's assertion that the law of the case doctrine does not apply because the court "has never considered the issue of whether Canadian law applies," Docket No. 401 (Reply) at 6, is sophistry. The issue presented by the instant motion is not whether Canadian law applies in some abstract sense but whether it applies to the named insured and allocation issues. *See id.* at 14. The court has considered those issues, as described above.

6. Even if the 1958 letter were admissible, it would hardly provide a silver bullet. The supposed evidence of the parties' intent is embodied in one sentence lacking both context and unambiguous language conveying an understanding that the policy would *exclusively* cover only Flintkote Canada and Flintkote Mines.

7. Aviva argues that Flintkote has not been prejudiced by the timing of Aviva's motion. The court cannot agree. Flintkote briefed a motion using California law; it should not be required to brief a second motion on the same issue under different law due to Aviva's failure to timely invoke foreign law. Moreover, the court has devoted significant resources to deciding issues involving apportionment of damages. The interest in conservation of scarce judicial resources militates against allowing a party to relitigate an issue that has already been adjudicated.