UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE FLINTKOTE COMPANY, | No. C 04-01827 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| GENERAL ACCIDENT ASSURANCE COMPANY OF CANADA, et al., | Re: Plaintiff's Motion for Summary Judgment on Plaintiff's Claim of Breach of Implied Covenant of Good Faith and Fair Dealing |
| Defendants. | |

In this action, which was filed in May 2004, plaintiff The Flintkote Company ("Flintkote") alleged that defendant Aviva Insurance Company of Canada ("Aviva"), the successor-in-interest to General Accident Assurance Company of Canada ("General Accident"), failed to defend or indemnify Flintkote for claims covered under a primary insurance policy. The court has found that Aviva violated its contractual obligations to Flintkote. In addition to breach of contract, Flintkote alleges that Aviva's conduct has violated the policy's implied covenant of good faith and fair dealing. Now before the court is Flintkote's motion for summary judgment on this claim. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

## BACKGROUND

### I. The Policy

Plaintiff Flintkote, presently headquartered in San Francisco, is a company that formerly mined and sold asbestos and asbestos-based products. Defendant Aviva, based in Toronto, is the successor-in-interest to, among others, General Accident, which issued general liability policies to two Flintkote Canadian subsidiaries: The Flintkote Company of Canada Limited ("Flintkote Canada") and The Flintkote Mines Limited ("Flintkote Mines"). In 2004, Flintkote sought bankruptcy protection as a result of the large volume of asbestos-related litigation that arose in response to findings that exposure to asbestos fibers can have severe long-term health consequences. Flintkote brought the present action in order to obtain declaratory relief related to the scope of coverage under its policy with Aviva as well as indemnification for money paid out as a result of past litigation.

The insurance policy at issue, number L-90-5010 ("the policy"), was a commercial general liability insurance policy in force between 1958 and 1961. The policy provides that the "Name of Insured" includes "THE FLINTKOTE COMPANY OF CANADA LIMITED and/or THE FLINTKOTE MINES LIMITED and/or Subsidiary or Affiliated corporation or corporations now existing or hereafter created as their respective interests may appear." Docket No. 376 (Chen Dec.), Exh. 3 ("Policy") at TR0000041. It also provides:

> This policy shall cover the following as Additional Insureds in respect of liability arising from the risk of the named Insured:
> (1) Persons, firms or corporations financially controlling or controlled by the Insured.
> (2) Agents of the Insured having care, custody or control of the property or operations of the Insured."

*Id.* at TR0000046.

### II. Communications and Claims

On October 12, 1982, Flintoke's risk manager gave notice of the first claim against the policy to Marsh & McLennan of Toronto, Flintkote's insurance broker.[1] *Id.*, Exh. 1. Neither General Accident nor Marsh & McLennan had a copy of the policy, so Flintkote forwarded a copy to Marsh & McLennan on December 8, 1982. *Id.*, Exh. 2. Aviva immediately retained coverage counsel who

responded to Flintkote's notice. General Accident stated that there were "substantial questions pertaining to coverage" and requested some information, including "the names of prior and subsequent insurers of the Flintkote group and copies of applicable policies" and "a brief description with supporting documentation of the relationship between Flintkote Mines Limited, the Flintkote Company of Canada Limited and any other corporation which might be described as an affiliated or subsidiary company between January 1958 and January 1961." *Id.*, Exh. 5. Flintkote responded on March 29, 1983, stating, among other things:

> At the present time, American Mutual Liability Insurance Company (American Mutual) is defending and indemnifying with respect to all pending unsettled and all future asbestos bodily injury claims[.] . . . Notice of all claims was promptly given to March & McLennan for conveyance to any and all Insurers concerned through them, including but not limited to General Accident, whereby Flintkote reasonably and in a timely manner discharged all notification obligations. . . . Such insurers may, in due course, seek contribution from General Accident[.] . . . Since Flinktoke has not called upon your principals to defend or indemnify with regard to Flintkote Mines, even though reserving such right, it should be sufficient to keep you generally informed about matters pertinent. . . . Flintkote will, of course, offer all reasonable cooperation and information, but the present emphasis is merely to preserve, as opposed to actively attaching, policy number L90-5010.

*Id.*, Exh. 6

In July 1985, Flintkote sued American Mutual and its other insurers for clarification of their coverage positions, but it did not sue Aviva. *See id.*, Exh. 8. In July 1985, Flintkote notified General Accident that Flintkote had signed onto the Wellington agreement and the Asbestos Claim Facility as a member asbestos producer, and urged General Accident to become a signatory to the agreement. *See id.*, Exh. 9.

Thereafter, relevant communications between the two parties generally consisted of periodic notices of litigation sent by Flintkote. Each letter contained a cover sheet that stated:

> By copy of this letter and attachment which constitute a Notice of Occurrence, pursuant to each and every applicable policy of insurance, Flintkote's insurers are placed on notice of their respective duties and obligations under said policies to participate in the defense and/or indemnity of Flintkote in this matter.

*See* Docket No. 410 (Maister Supp. Dec.), Exh. I. Each letter also contained a printout of asbestos cases served on Flintkote for the month preceding the letter. *See id.* The last of these letters was sent by Flintkote in May 1996. Docket No. 132 (Ross Dec.) ¶ 17. Aviva never took any action to provide defense or indemnity based upon these letters. *See* Opp. at 3. In October 2003, Flintkote

3

sent a letter to Aviva requesting coverage for Flintkote under the policy. Chen Dec., Exh. 10. This letter led to several communications, one meeting and the filing of this lawsuit.

III. <u>Previous Decisions in this Case</u>

In response to the parties' earlier motions for partial summary judgment, this court concluded that the policy term "Affiliated Corporations" included plaintiff The Flintkote Company, and that The Flintkote Company was therefore a "named insured." *Flintkote Co. v. Gen. Accident Assurance Co.*, 410 F. Supp. 2d 875, 894 (N.D. Cal. 2006) (Patel, J.). The court thereafter found that Flintkote properly tendered its claims to Aviva and its predecessor-in-interest through its various notices and communications. *Flintkote Co. v. Gen. Accident Assurance Co.*, 480 F. Supp. 2d 1167, 1176 (N.D. Cal. 2007) (Patel, J.). Thus, it has already been determined that Aviva is liable to Flintkote under the policy. Currently remaining for adjudication are Flintkote's claim for bad faith and the determination of damages. Flintkote filed the instant motion for summary judgment August 31, 2009, arguing that Aviva breached the policy in bad faith as a matter of law. Oral argument was heard on October 7, 2009.

<u>LEGAL STANDARD</u>

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-255 (1986). A fact is "material" if it may affect the outcome of the proceedings, and an issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The moving party bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 250. The court may not make credibility

4

determinations, and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see also Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

DISCUSSION

Flintkote contends that it is entitled to summary judgment that Aviva[2] acted with bad faith. "As with all contracts, insurance contracts include an implied covenant of good faith and fair dealing." *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006) (citing *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818 (Cal. 1979), *cert. denied*, 445 U.S. 912). An insurer tortiously breaches this implied covenant when it engages in unreasonable conduct in connection with an insured's insurance claim. *Id.* Thus, a claim for bad faith requires that "(1) benefits under the policy were withheld and (2) the reason for withholding the benefits was unreasonable or without proper cause." *Id.* (citing *Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 920 (Cal. 1978)). "However, where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of the dispute." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001). "There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act." *Century Sur.*, 139 Cal. App. 4th at 949 (internal quotation marks omitted) (citing *Chateau Chamberay*, 90 Cal. App. 4th at 396). The reasonableness or unreasonableness of an insurer's decision to deny coverage is ordinarily a question of fact to be determined by a jury. *Chateau*, 90 Cal. App. 4th at 350. However, the question may be determined by the court upon motion for summary judgment where, because there are no conflicting inferences, reasonable minds could not differ on the outcome. *Id.*

According to Flintkote, it has already been determined—by decisions of the court and through admissions by Aviva—that: (1) Aviva breached its obligations under the policy; (2) Flintkote properly tendered its claims to Aviva; (3) Aviva did not provide a coverage

determination to Flintkote; and (4) Aviva adopted a "wait and see" approach to the coverage. Flintkote points to a number of statements by Aviva employees to show that Aviva consciously decided to take a "wait and see" attitude and to avoid, if possible, providing coverage due to Flintkote. Flintkote admitted at the hearing on this motion that it has uncovered no relevant cases in which a court has granted a plaintiff summary judgment on a bad faith claim against an insurer. Aviva contends that its actions were not in bad faith because they were based upon beliefs that, although incorrect, were reasonable under the circumstances.[3] Specifically, Aviva argues that it reasonably believed (1) Flintkote was not covered under the policy and (2) Flintkote had not effectively requested a defense or payment of claims before October 2003. As to the latter point, Aviva takes pains to point out that both Flintkote and its other carriers remained silent for decades while asbestos-related suits were ongoing.

I.  Reasonableness of Aviva's Belief Flintkote Was Not A "Named Insured"

Aviva first argues that it was reasonable to believe that Flintkote was not covered as a "named insured" under the policy. Although previous rulings in this case have established that Flintkote was actually covered as a "named insured," such rulings do not necessarily establish that Aviva was unreasonable in believing otherwise at an earlier time. The circumstances surrounding the issuance of the policy may still have supported a reasonable belief that Flintkote was not covered, even though the court later found that it was covered.

The policy lists on its face only Flintkote Canada and Flintkote Mines by name. These two Canadian companies executed an insurance policy in Canada with a Canadian insurance company. The Flintkote Company was the U.S. parent company that owned the two Canadian companies. As the court has previously noted, the policy contains some provisions that could be read to suggest the policy was intended to cover only the local Canadian mining operations. *See* 410 F. Supp. 2d at 888. While Aviva was incorrect in believing that Flintkote was not covered by the policy, the court is unprepared to hold that the belief was unreasonable as a matter of law. Viewing the facts and drawing inferences in a light most favorable to Aviva, a reasonable jury could find that this belief was reasonably held.

6

Flintkote contends that Aviva has failed to cite to any evidence that it *actually* believed Flintkote was not covered as a "named insured" under the policy. If a party's actions are objectively reasonable under the circumstances, its subjective intent is irrelevant. *Morris v. Paul Revere Life Ins. Co.*, 109 Cal App. 4th 966, 973-974 (2003). Therefore, Aviva need not produce evidence of its subjective intent if its actions were objectively reasonable.

Flintkote further argues that even if Aviva reasonably believed that Flintkote was not a "named insured," it still acted in bad faith because it has never disputed that The Flintkote Company was at least an "additional insured" under the policy. Aviva responds that it knew Flintkote was an "additional insured" but did not believe Flintkote was covered for the type of direct liability that was at issue. The policy states "This policy shall cover the following Additional Insureds in respect of liability arising from the risk of the named Insured [i.e., Flintkote Canada and Flintkote Mines] . . . ." Policy at TR0000046. Aviva contends that it reasonably believed the policy applied only with respect to liability that is attributed vicariously to Flintkote by reason of Flintkote's parent relationship with Flintkote Canada or Flintkote Mines. Flintkote argues that a duty to defend generally extends to parties listed as "additional insureds." However, it does not address the specific limiting language used in this particular clause other than to say that the phrase "arising from" is to be given a broad interpretation and "does not import any particular standard of causation or theory of liability into an insurance policy." Docket No. 409 (Reply) at 2. Flintkote may prevail at trial, but drawing all reasonable inferences in favor of Aviva, the court finds Flintkote has, for the purposes of a motion for summary judgment, inadequately demonstrated Aviva was objectively unreasonable in believing it was not liable to defend Flintkote under the "additional insured" clause of the policy.

II. <u>Reasonableness of Aviva's Belief Flintkote Had Not Requested Defense or Indemnification</u>

Aviva also contends that it was reasonable in not providing a defense or indemnification because it reasonably believed Flintkote had not actually requested such. Here too, previous rulings in this case have established that Flintkote effectively tendered its claims. *See* 480 F. Supp. 2d at 1176. The question now before the court is whether it was objectively reasonable at the time for

7

Aviva to believe that the communications from Flintkote did not effectively request defense or indemnity.

The communications concerning the claims at issue between Flintkote and Aviva are not entirely unambiguous. In the March 29, 1983, letter, a Flintkote representative explained "Since Flintkote has not called upon your principals to defend or indemnify with regard to Flintkote Mines, even though reserving such right, it should be sufficient to keep you generally informed about matters pertinent." Chen Decl., Exh 6 at 2. This could be read to indicate that Flintkote was not requesting any sort of action.[4] Aviva contends that it received no further requests from Flintkote until October 2003, other than the periodic notices of litigation which it received until 1996. Aviva further argues that a reasonable insurer would not have understood the periodic notices of litigation that were sent to all of Flintkote's insurers between 1987 and 1996 to be requests for defense or indemnity. Indeed, Flintkote was continuously defended by other insurance companies at the time these letters were sent and never followed up on them. Viewing this conflicting evidence in a light most favorable to Aviva and drawing all reasonable inferences in favor of Aviva, a reasonable jury could find that Aviva reasonably believed that Flinkkote had not actually requested a defense or payment of claims until 2003. Accordingly, this is not a matter to be decided in Flintkote's favor on summary judgment.

III. <u>Reasonableness of Aviva's Decision Not to Investigate</u>

Flintkote contends that a genuine issue or dispute concerning liability does not excuse an insurer's duty to investigate. Accordingly, even if Aviva had a reasonable basis for not providing coverage, i.e., the belief that the policy did not cover The Flintkote Company, Aviva would nevertheless be liable for bad faith breach of contract if it did not investigate whether denial of coverage was appropriate.

Flintkote couches the argument in repeated assertions that Aviva is not entitled to rely upon the "genuine dispute doctrine" as a defense. As Flintkote has noted, Aviva did not technically deny the claims during the pertinent time period; therefore, there was not a "dispute" as it commonly arises under this doctrine. However, whether or not the "genuine dispute doctrine" applies to this

8

case,[5] the critical inquiry of bad faith is not changed. The proper inquiry is whether the insurer's conduct was reasonable in light of the particular facts of the case. Therefore, the applicability of the "genuine dispute doctrine" aside, if Aviva was reasonable in not making further communications or investigations in light of the nature of the policy and the notices it received, it did not breach in bad faith.

Flintkote's argument about failure to investigate rests on overbroad readings of two California Supreme Court cases. Flintkote relies upon *Egan v. Mutual of Omaha Insurance Company*, 24 Cal.3d 809, 819 (Cal. 1979), and *Wilson v. 21st Century Insurance Company*, 42 Cal.4th 713, 723-24 (Cal. 2007), for the proposition that an insurer must conduct an investigation despite the existence of a genuine issue as to coverage liability. In the *Egan* case, the insurer relied upon records created by the insured's treating physicians to determine that the insured suffered from an illness, not an injury; this determination affected the benefits to which the insured was entitled. 24 Cal.3d at 816. The insurer's employees made no attempts to actually contact the physicians, and trial testimony established that efforts to discuss the case with attending physicians would ordinarily have been made by a claims adjuster. *Id.* The California Supreme Court held that the trial court properly instructed the jury that the insured's bad faith claim was established because undisputed evidence showed that the insurer failed to properly investigate the plaintiff insured's claim. *Id.* at 819. In analyzing *Egan*, the Ninth Circuit has found that the holding was not as broad as Flintkote suggests:

> The *Egan* court did state that 'an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.' However, this statement is much broader than the actual holding of *Egan*. The insurer in *Egan* denied the claim without a thorough investigation *and* without any good faith reason to believe that it was not liable for the claim.

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 282 (9th Cir. 1992) (emphasis in original), *cert. denied*, 507 U.S. 914. The court went on to state that where there is already a genuine issue concerning the insurer's liability, there is no duty to conduct a thorough investigation of the claim. *Id.* at 282. Accordingly, if there is a reasonable basis for an insurer's

belief that it is not liable to a particular claimant, the insurer will not necessarily be found to have acted in bad faith because it failed to conduct an investigation into the facts of the claim.

Echoing *Egan*, the *Wilson* court wrote, "The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *Wilson*, 42 Cal. 4th. at 723. However, the *Wilson* court also wrote:

> We agree that, the critical issue being the reasonableness of the insurer's conduct under the facts of the particular case, stating a general rule as to how much or what type of investigation is needed to meet the insurer's obligations under the implied covenant is difficult. An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions. In some cases, review of the insured's submitted medical records might reveal an indisputably reasonable basis to deny the claim without further investigation.

*Id.* Thus, the court was not attempting to create a hard and fast rule for determining unreasonableness when it comes to an insurer's investigation. The court merely opined that where an insurer denies a claim based on factual assertions, the insurer must have a reasonable good faith basis for those factual assertions. In many cases this cannot be done without a factual investigation into the claim.

Indeed, the facts of *Wilson* are distinguishable from the instant case. The *Wilson* plaintiff had suffered neck injuries resulting from a car accident. *Id.* at 717. After being examined by two doctors, the plaintiff received a diagnosis that she probably had degenerative disk changes as a result of the car accident. *Id.* The defendant insurance company rejected her claim, stating that the plaintiff had a pre-existing condition and that it was unlikely that the accident caused the condition, and noting that the plaintiff took a long vacation to Australia after the accident. *Id.* at 719. However, the insurance company did not attempt to contact the plaintiff's doctor or speak with any other medical practitioner about the claim. *Id.* Because the dispute as to liability was a factual dispute—not a dispute as to policy interpretation—the court found that, without investigation, the dispute was not "genuine," i.e., the insurance company did not have a reasonable factual basis to deny the claim. *See id.* at 724-26. Here, a basis for Aviva's failure to defend is a legal dispute as to policy interpretation. Because the dispute does not pertain to the factual circumstances of the asbestos bodily injury claims, further investigation into the facts of those claims could not have

10

produced information relevant to the alleged dispute. A jury could find that Aviva took the actions it did, or rather did not take action, based upon reasonable grounds.

Moreover, the procedural posture of *Wilson* involved a motion for summary judgment by the defendant insurance company, not the plaintiff insured. *See id.* As distinguished from the instant motion, the insurance company was seeking a ruling that, despite its failure to investigate, it was entitled to a judgment as a matter of law that it had not acted in bad faith. *See id.* Ultimately, the court held only that where an insurer denies a claim based on a factual assertion without first investigating, there is a triable issue of fact as to whether the factual assertion had a reasonable basis.

In summary, there are triable issues of fact as to whether Aviva could reasonably have believed that Flintkote (1) was not covered under the policy and (2) had not effectively requested defense or indemnity. Moreover, there is a triable issue of fact as to whether, in light of those beliefs, Aviva was reasonable in breaching the policy by not communicating, investigating, defending or indemnifying Flintkote. This is not the typical bad faith case in which an insurer has flatly denied a claim and is attempting to justify the denial. Here the insurer received notices of the insured's claims and, while not providing benefits, never actually denied the claims. The insurer simply took no action while the insured was defended by other insurers under other policies and was not pressing the insurer to take any action.[6] The set of circumstances present in this cases makes it even more difficult for Flintkote to succeed in obtaining summary judgment of bad faith, and indeed it does not.

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: Oct 29, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

# **ENDNOTES**

1. The risk manager was employed by Genstar Corporation, which had taken over Flintkote by that time.

2. For the purposes of the following discussion, the court refers to General Accident and Aviva collectively as "Aviva."

3. Aviva has proffered the testimony of three expert witnesses. Flintkote has filed a motion to exclude the testimony of these experts from trial. *See* Docket No. 301. It is unnecessary to rely on these opinions for purposes of the instant motion.

4. On July 8, 1985, Flintkote further informed Aviva that it had joined the Wellingtion Agreement and that: "As sole agent, the facility shall have the exclusive authority and discretion to administer, evaluate, settle, pay or defend all asbestos related claims. Accordingly, Flintkote will tender its pending and future asbestos related claims to the facility." *Id.*, Exh. 9 at 1-2.

5. This court does not reach the issue of whether the "general dispute doctrine" applies where the insurer did not actually deny the claim.

6. It is worth noting that Flintkote's quiescence could have an impact on the damages awarded, regardless whether it affects Aviva's bad faith as such.